UNITED STATES OF AMERICA NORTHERN DISTRICT COURT OF OHIO

FEDERAL COMPLAINT

CASE NO:

1:20 CV 558
JUDGE NUGENT

MAG. JUDGE PARKER

**Plaintiff**

Ketra Whitfield

8518 Jeffries Ave

Cleveland, Ohio 44105

V.

**Defendants**

University Hospitals St. John Medical Center

29000 Center Ridge Rd.

Westlake, Ohio 44145

**SERVE TO:** ACFB INCORPORATED 200 PUBLIC SQUARE SUITE 2300 CLEVELAND OH 44114

And

Westshore Primary Care Associates, Inc.

26908 Detroit Rd, Suite 31

Westlake, Ohio 44145

**SERVE TO**: UNIVERSITY HOSPITAL

3605 WARRENSVILLE CENTER RD

SHAKER HEIGHTS, OHIO 44122

### STATEMENT OF CLAIM

Ketra Whitfield, claimant herein, files this lawsuit against University Hospitals Saint John Medical Center and Westshore Primary Care Associates Inc.

### PARITIES AND JURISDICTION

1. This is an action for injunctive relief and damages based upon the violation of the plaintiff's rights under the fourteenth amendment to the United States constitution. Jurisdiction exists based on questions of federal constitutional law.

2. The defendants University Hospitals St. John Medical Center and Westshore Primary Care Associates Inc. are both Ohio corporations providing medical services to Cuyahoga County and has its principle place of business in Cuyahoga County therefore the United States Northern District of Ohio is the appropriate venue.

3. All remaining defendants are medical providers providing medical services in Ohio, and at the time of the alleged medical malpractice were all employees and/or agents of the defendant University Hospitals St. John Medical Center and were thus acting within the scope of that employment or agency when they failed to follow the applicable standard of medical care during their care of the plaintiff on or about Aug 15, 2016 and thereafter.

4. Plaintiff has brought this complaint before the court within 1 year of discovery of medical malpractice and discovery of medical records containing evidence of drugs administered without either the knowledge or consent of the plaintiff.

**FACTS**

5. Plaintiff was a patient of the Westshore Midwives Associates (apart of Westshore Primary Care Inc.) during her pregnancy in 2016. Plaintiff expressed both written and verbally during her prenatal care with Westshore Primary Care the desire to give birth completely natural without the aid of IV fluids, labor inducing drugs or pain management drugs. Plaintiff opted to give birth at Saint John Medical Center's "holistic" birthing center.

6. On or about August 15, 2019 plaintiff was admitted to University Hospitals Saint John Medical Center in active child labor after plaintiff was instructed by the on-call nurse midwife at Westshore Primary Care via phone to come into the emergency room at Saint John Medical Center.

7. That on or about August 15, 2019, Pitocin, a labor inducing drug was administered to the plaintiff through an IV without either the knowledge or consent of the plaintiff. Plaintiff refused the drug Pitocin several times when offered by hospital staff.

8. Pitocin is a sterile, clear, colorless aqueous drug used to induce child labor or speed up active labor. The synthetic form of oxytocin, Pitocin causes stronger and more painful contractions than natural child birth. Pitocin induction is rarely used without the aid of an epidural since uterine contractions are often much more painful and intense than natural uterine contractions.

9. Plaintiff expressed on numerous occasions both written and verbally that she did not want to receive any drugs or unnatural interventions during labor and delivery including Pitocin during

and after delivery. Plaintiff not only express this in the hospital on Aug 15 she also expressed this throughout her prenatal care with Westshore Midwives Associates both written and verbally.

10. At or about 3:50am hospital staff notes on plaintiffs medical record "PT REFUSES HEPLOCK BLOOD DRAW. PT PERFERS NO PITOCIN AFTER DELIVERY"

11. At or about 4:45am after repeated suggestion and pressure from hospital staff for plaintiff to receive IV fluids and pain management drugs hospital staff notes on plaintiff's medical record "PT (patient) CONTINUES TO DESIRE NCB (natural child birth)".

12. At or about 6:15am hospital staff continually pressure plaintiff to receive IV fluids and pain management drugs. At this time, Hospital staff notes on plaintiff's medical record "PT (patient) CONTINUES TO DESIRE NCB (natural child birth)."

13. At or about 6:20am on August 15 hospital staff notes on plaintiff's medical records "COPING WELL WITH UCS (uterine contractions)"

14. Between 3am and 8am nurses and hospital staff repeatedly offer IV fluids to plaintiff even though plaintiff declined IV fluids NUMEROUS times. Hospital Staff continue to offer IV fluids, pain medication and labor inducing drugs to plaintiff even though plaintiff is managing uterine contractions well, progressing normally with labor and CONTINUALLY expressing to hospital staff the desire to continue with labor naturally.

15. At or about 8:06am on August 15 hospital staff note on plaintiffs medical record "PT BECOMING VERY TIRED AND UNABLE TO AMBULATE TO STIMULATE STRONGER UCS (uterine contractions). DECLINED RECOMMENDED IV FLUIDS. CURRENTLY SITTING ON BIRTHING BALL AND DOZING INBETWEEN UCs (uterine contractions).

16. At or about 8:06am plaintiff had been in active child labor for more than 7 hours. Plaintiff is still progressing normally with labor and coping well with uterine contractions, as noted on Plaintiff's medical records. As a normal part of child labor plaintiff becomes tired but is still progressing normally and is responsive to hospital staff. Plaintiff is able to rest in between uterine contractions. Hospital Staff continue to pressure plaintiff into receiving IV fluids although there was no medical need at this time and plaintiff has continually denied IV fluids for the past 5 hours.

17. At or about 8:17am nurse notes "PT (PATIENT) MOANING AND FRUSTRATED; FHR WITH INTERMITTENT AUSCULATION IS 130s – 140s CONTRACTIONS APPEAR TO BE FREQUENT BUT SHORT LASTING; CERVIX ON MY EXAM NOW IS 6/70/-2 asynclitic report to Dr. Campbell; DISCUSSED STATUS WITH PAIENT AND ENCOURAGED HER TO THINK ABOUT MANAGEMENT STRATEGIES FROM HERE--- MAY NEED PITOCIN AT SOME POINT TO FACILITATE BETTER CONTRACTIONS AND PROGRESS WITH EFFACEMENT AND DILATION; EXPECT SVD; ALL QUESTIONS ANSWERED.

18. Plaintiff continues to decline hospitals staff advances for IV fluids, Pitocin and blood work. At this point, plaintiff is tired and frustrated with hospitals staff repeated advances for IV fluids.

19. Somewhere between 8:17am and 8:30am plaintiff, tired frustrated and still in active child labor, give in to demands of hospital staff to accept IV fluids ONLY. Plaintiff agrees to receive IV fluids only to rehydrate herself. Plaintiff does not give consent to hospital staff to administer the labor inducing drug Pitocin.

20. At or about 8:40am IV is administered to plaintiff as noted in the Plaintiff's medical records.

21. Shortly after plaintiff received IV uterine contractions gradually get stronger and eventually become painfully unbearable. Plaintiff does not know that Pitocin has been administered through the IV to stimulate stronger uterine contractions. Plaintiff becomes inconsolable, angry and frustrated due to the extreme pain caused by undesired, unauthorized and unneeded labor induction.

22. The drug Pitocin takes effect quickly after administration (within 30 minutes of administration).

23. As a direct result of receiving Pitocin the plaintiff is no longer able to manage pain of contractions naturally. Hospital staff recommends Nubain for pain management to the plaintiff. Plaintiff is in extreme physical pain and is unaware as to why her contractions are becoming so intense so quickly. Plaintiff now has other no choice but to accept the suggested pain management drug Nubain.

24. Nubain is administered to plaintiff at or about 9:03am

25. While under the influence of Nubain plaintiff can still feel the pain from the contractions but cannot react to them. Nubain is short lasting and pain from contractions return after about one hour of receiving the drug. Hospital staff recommends another dose of Nubain, and do to the intense pain, plaintiff agrees. Hospital staff do not explain to the plaintiff risks associated with receiving Nubain so close to delivery.

26. As a direct and proximate result of the plaintiff receiving a labor inducing drug, without either knowledge or consent, hospital staff violated the applicable standard of medical care by not informing the plaintiff and by not obtaining consent from the plaintiff prior to administering a labor inducing drug. Furthermore, as a result of receiving the labor inducing drug, hospital staff put the health and safety of the plaintiff's unborn child at risk unnecessarily.

27. There was no medical need for the plaintiff to receive Pitocin during or after her labor and delivery. Plaintiff was managing natural contractions very well and labor was progressing normally. Hospital staff administered Pitocin, without either the knowledge or consent of the plaintiff and against the plaintiff's explicit will, in order to intentionally speed up the labor and delivery process.

28. At or about 10:37am nurses note on Plaintiff's medical records "GOT SOME RELIEF FROM NUBAIN AND WANTS MORE ASAP... I THINK IT IS UNLIKELY SHE WILL BIRTH IN THE 1-2 HOURS – WILL PROCEED WITH 1 MORE DOSE OF NUBAIN AS PATIENT IS DEFINITLEY OPPOSED TO EPIDURAL ANESTHESIA WILL CHANGE HER POSTITION TO LEFT LATERAL TO FACILITATE ROTATION. ALL QUESTIONS ANSWERED".

29. Plaintiff gives birth at 11:56am

30. Shortly after delivery nurses note on Plaintiff's medical record "CODE PINK PAGED TO ATTEND BECAUSE OF RECENT DOSE OF NUBAIN." (The drug Nubain is dangerous to unborn fetuses if given within 2 hours of delivery).

31. Plaintiff choose the "Holistic birthing center" at University Hospitals Saint John Medical Center to experience a natural child birth; however hospital staff intentionally rushed labor and delivery by giving the plaintiff a labor inducing drug without either her knowledge or consent.

32. As a direct result of receiving Pitocin without knowledge or consent plaintiff experienced extreme physical and conscious pain during labor and delivery as well as long term emotional and psychological damage.

33. As a further direct and proximate result of this hospitals staff violating the rights of the plaintiff, the plaintiff is apprehensive about receiving care from any hospital or any doctor. Furthermore, as a direct result of the experience the plaintiff had during labor and delivery the plaintiff decided not to have any more children because she was traumatized by the physical pain experienced from a labor inducing drug that she did not know she received.

34. Plaintiff was coaxed into receiving an IV while the plaintiff was in active child labor by hospital staff even after the plaintiff refused hospital staffs advances NUMEROUS times.

35. As a direct result of being coaxed into receiving the IV plaintiff was administered Pitocin without either knowledge or consent.

36. As a direct result of receiving Pitocin without either knowledge or consent plaintiff was left with no choice but to receive the (nurse suggested) Nubain drug for pain relief, as the contractions created from Pitocin were extremely painful and unbearable.

37. Plaintiff was coaxed by hospital staff while Plaintiff was in active child labor to:

    1. Have her membrane artificially ruptured
    2. Receive IV fluids
    3. Receive the drug Nubain for pain caused by Pitocin
    4. Wear an electronic fetal monitor

38. Medical records obtained from the defendants by the plaintiff are incomplete and inaccurate. Hospital staff appears to intentionally attempt to cover up the administration of Pitocin in the plaintiff's medical records.

39. Specifically plaintiff's "fluid administration record" is incomplete and inaccurate and is missing information prior to 11am on August 15, 2016 (WHEN THE PLAINTIFF WAS IN ACTIVE LABOR) but medical record (fluid administration record) does note plaintiff receiving Pitocin at "2:00" on August 15 which contradicts another medical record (Medication discharge summary) which notes plaintiff receiving Pitocin at "3:02"

40. Plaintiff did not assume the risks for her injuries.

41. As a direct result of the Defendants breaching the applicable standard of medical care owed to the plaintiff, and violating the plaintiffs constitutional right the plaintiff suffered unnecessary extreme physical pain during labor and delivery as well as long term emotional and psychological damage to which she may never recover.

### COUNT 1 (NEGLIGENCE – MEDICAL MALPRACTICE)

1. The Plaintiff restates and reincorporates by reference the claims made in paragraphs 7-43 above.

2. That the staff at University Hospitals Saint John Medical Center did not do what reasonable, ordinary medical professionals would do in treating the Plaintiff. The treatment deviated from the appropriate standard of care when hospital staff intentionally coaxed plaintiff into receiving undesired IV fluids and then failed to obtain consent from the plaintiff prior to administering a labor inducing drug (PITOCIN) during active child labor through that IV.

3. The American Code of Medical Ethics states that informed consent is fundamental in both ethics and law. Not only did the defendants not obtain consent from the plaintiff prior to administering the drug Pitocin, the drug was administered to the plaintiff against her explicit will and without her knowledge. Evidence of the plaintiff's denial of the drug is noted in the plaintiff's medical records.

4. That during all of the times alleged herein that the Plaintiff was receiving medical care and treatment from Defendants (Hospital Staff) Colleen Zelonis, Maureen Stein-Vavro, these defendants were employed by University Hospitals St. Johns Medical Center and thus were acting within the scope of that employment.

### COUNT 2 (FOURTEENTH AMENDMENT VIOLATION)

1. The plaintiff restates and reincorporates by reference the claims made in paragraphs 7-43 above.
2. Defendants, their employees and agents, owed Plaintiff a duty under the due process clause of the Fourteenth Amendment to the United States constitution to obtain

consent from the plaintiff before administering a drug that would significantly alter her labor process.
3. Defendants knowingly administered the drug Pitocin to the plaintiff against her explicit will and without her knowledge even after she refused the drug several times. This is a clear and direct violation of the plaintiff's right to liberty under the fourteenth amendment to the United States constitution.

**RELIEF**

WHEREFORE, Plaintiffs request of this Court the following equitable relief:

1. Compensatory damages in the amount of $350,000 together with attorney fees and court costs
2. Punitive damages in the amount of $150,000
3. Such other and further relief as this Court may deem necessary or proper.

RESPECTFULLY SUBMITTED,
KETRA WHITFIELD

*[signature: Ketra Whitfield]*

DATED THIS 12th day of March 2020

8518 Jeffries Ave
Cleveland Ohio 44105